## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WESLEY BOOR, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-24-2005 |
| AMERICAN WOODMARK CORPORATION, | * | |
| | * | |
| *Defendant*. | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OPINION

This case arises out of an employment dispute between Plaintiff Wesley Boor ("Plaintiff" or "Boor"), a citizen of Maryland, and Defendant American Woodmark Corporation ("Defendant" or "American Woodmark"), which is incorporated and has its principal place of business in Virginia.[1]  (ECF No. 2; ECF No. 1 ¶¶ 5, 6.)  Boor, who began working for American Woodmark in July 2018, contends that he was wrongfully terminated on December 28, 2023, from his role as First Shift Supervisor.  (ECF No. 2 ¶¶ 3–5, 13.)  On June 10, 2024, Boor initiated this action against American Woodmark by filing in the Circuit Court for Allegany County, Maryland, a two-count Complaint alleging breach of contract (Count I) and wrongful termination (Count II).  (*Id.*)  On July 11, 2024, Defendant timely removed the case to this Court, which has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  (ECF No. 1.)

---

[1]  Although American Woodmark is incorporated in Virginia and has its principal place of business in Virginia, (ECF No. 1 ¶ 5), Boor worked at an American Woodmark assembly plant located in Cumberland, Maryland. (ECF No. 2 ¶ 3.)  The events giving rise to this action occurred at the Cumberland assembly plant.

Currently pending before this Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Defendant's Motion") (ECF No. 5). Plaintiff has responded in opposition (ECF No. 12), and Defendant has replied (ECF No. 13). The parties' submissions have been reviewed, and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 5) is GRANTED as to both Count I and Count II. Specifically, Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE with leave to amend within fourteen (14) days of the date of this Memorandum Opinion and accompanying Order, i.e., by April 11, 2025.[2]

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 2) and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 5).

Beginning in July 2018, Plaintiff Boor was employed by Defendant American Woodmark as a Second Shift Supervisor at its assembly plant in Cumberland, Maryland. (ECF No. 2 ¶ 3.) During his employment, Boor was promoted on two separate occasions—first to Third Shift Superintendent in September 2021 and then to First Shift Supervisor in March

---

[2] As explained further below, Plaintiff's tort claim of wrongful discharge in Count II is precluded by federal and state statutory remedies. Dismissal will be without prejudice as to Count II, however, in recognition that these statutes authorize causes of action for wrongful discharge pursuant to statutory requirements such as administrative exhaustion.

2023—and never received a negative performance review.  (*Id.* ¶¶ 4–5, n.3.)  Boor has several medical issues, including diagnoses of hyperthyroidism and type 2 diabetes, and he alleges that American Woodmark was aware of his medical disability.[3]  (*Id.* ¶¶ 6, 8.)  According to Boor, he sometimes suffered diabetic episodes at work such that American Woodmark was familiar with his symptoms and any aid needed during such episodes.  (*Id.* ¶¶ 7, 8.)

Boor alleges that, on December 20, 2023, he suffered a diabetic episode at work.  (*Id.* ¶ 7.)  Rather than rendering medical assistance to Boor, American Woodmark transported him to a drug testing facility to complete a drug test.  (*Id.* ¶¶ 8–9.)  According to Boor, American Woodmark claimed to have "reasonable suspicion" for the drug test after Boor fell asleep in a meeting and was slurring words.  (*Id.* ¶¶ 8–10; ECF No. 1, Ex. C-1.)  Boor alleges that he never consumed drugs during work hours or at his employment site, and any behavior he exhibited on December 20, 2023, was the result of the diabetic episode he experienced at work that day.  (*Id.* ¶ 10 n.2.)  Eight days later, on December 28, 2023, American Woodmark terminated Boor's employment.  (*Id.* ¶¶ 13.)  In correspondence to Boor, American Woodmark stated that he was terminated because, based on the drug test results "along with the information [Boor] w[as] provided during . . . telephone and in-person exchanges, [he] was under the influence of THC while at work which violates American Woodmark's *Substance Abuse Policy*."[4]  (ECF No. 1 Ex. C-1.)

---

[3] Specifically, Boor alleges that he has been diagnosed with "hyperthyroidism and type 2 diabetes mellitus with diabetic polyneuropathy and hyperglycemia, amongst other diagnoses."  (ECF No. 2 ¶ 6.)

[4] Although Boor's Complaint does not explicitly provide the results of the drug test, it includes as an attachment the correspondence in which American Woodmark disclosed the test results and explained its reason for terminating him on December 28, 2023.  (ECF No. 1 Ex. C-1 at 2.)  Because this correspondence was attached to the Complaint, the Court may consider it in evaluating Defendant's Motion.  *See Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) ("The Court may also consider documents attached to the

On June 10, 2024, Boor filed a two-count complaint against American Woodmark in the Circuit Court for Allegany County, alleging breach of contract (Count I) and wrongful termination (Count II).  (ECF No. 2 at 4, 6.)  American Woodmark timely removed the action to this Court on July 11, 2024, based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1).  (ECF No. 1.)  In Count I, Boor alleges that American Woodmark breached its contractual obligation "by wrongfully terminating Plaintiff as a result of Defendant AWC's discrimination against Plaintiff for his disability/medical complications with diabetes."  (ECF No. 2 ¶ 27.)  Boor further alleges that he did not receive the ten percent base pay increase to which he was entitled after his first promotion to Third Shift Superintendent in September 2021 and that American Woodmark's failure to properly compensate him was "not only unlawful, but intentional and malicious."  (*Id.* ¶¶ 28, 29.)  Boor contends that American Woodmark "deducted significant hours and pay" from his paychecks from March 2023 to December 2023 and cites several pay statements wherein he was "docked" hours of work.  (*Id.* ¶ 29; ECF No. 1, Ex. C-2.)  In Count II of his Complaint, Boor asserts a claim that American Woodmark "wrongfully terminated" him "as a result of the Incident and Plaintiff's disabilities/medical complications with diabetes."  (ECF No. 2 ¶ 33.)  Specifically, Boor claims that American Woodmark discriminated against him in violation of the Americans with Disabilities Act[5] "and

---

complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic . . . .").

[5]   The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, protects employees from discrimination on the basis of various protected disability statuses.  In this case, Boor alleges that his termination was improperly based on his disability status based on the ADA, but he does not bring either of his two claims under the ADA.  Instead, he asserts his claims under his employment contract (Count I) and under Maryland tort law (Count II).

the parties' employment contract/agreement," which resulted in his wrongful termination. (*Id.* ¶¶ 35–36.)

On July 18, 2024, American Woodmark filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5). Boor responded in opposition (ECF No. 12), and American Woodmark has replied (ECF No. 13). This matter is now ripe for review.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and

unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

### I.    Breach of Contract Claim (Count I)

In its Motion to Dismiss, American Woodmark contends that Boor's breach of contract claim "fails as a matter of law" because Boor does not allege that the employment contract "is anything other than terminable at will." (ECF No. 5 at 5.) Further, American Woodmark argues that Boor's claim that it breached the employment contract by discriminating against him "for his disability/medical complications with diabetes," (ECF No. 2 ¶ 27), fails because it is based on a pre-existing, statutory duty not to discriminate. ECF No. 5 at 5.) Finally, American Woodmark asserts that Boor's claim that he is contractually entitled to a ten percent pay raise fails because he identifies no contractual provisions establishing that entitlement and fails to provide sufficient detail regarding the alleged unlawful deductions. (ECF No. 5. at 7–8.) In Opposition, Boor concedes that the employment agreement was at will, but argues that his termination was motivated by bad faith or malice in breach of the terms of the agreement. (ECF No. 12-1 at 4.) Boor contends that he has adequately stated claims regarding Defendant's failure to meet its contractual obligation to provide a ten-percent raise for his promotion to Third Shift Superintendent and alleged unlawful deduction of significant hours and pay from his paycheck. (*Id.* at 5.)

To state a claim for breach of contract in Maryland, a plaintiff must plead (1) the existence of a contractual obligation owed by the defendant to the plaintiff, and (2) a material breach of that obligation.[6]  *RRC Northeast, LLC v. BAA Md., Inc.*, 994 A.2d 430, 434 (Md. 2010).  As to the first element of breach of contract under Maryland law, an enforceable contractual obligation requires consideration.  *See Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992); *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (2003) ("A promise becomes consideration for another promise only when it constitutes a binding obligation."). "A promise to perform a pre-existing legal obligation does not constitute consideration." *Hoppe v. Coll. of Notre Dame of Md.*, 835 F. Supp. 2d 26, 35 (D. Md. 2011).  In this case, drawing all inferences to favor Boor as the non-moving party, Boor alleges three breaches of his employment contract with American Woodmark: (1) wrongful termination; (2) failure to provide promised raises; and (3) failure to provide proper pay for hours worked.  The Court addresses each alleged breach in turn.

First, Boor's breach of contract claim premised on alleged wrongful termination is deficient because he has not alleged facts sufficient to establish a contractual obligation.  In the context of an at-will employment contract, an employer generally owes no contractual obligation to continue employing an employee.  *Adler v. Am. Standard Corp.*, 432 A.2d 464, 467 (1981) ("The common law rule, applicable in Maryland, is that an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time.").  Even so, an employer's "unqualified right to discharge, with or without justification" is subject to the Maryland legislature's prohibition on discharging employees due

---

[6] Neither party disputes that Maryland law governs Boor's claims, each of which he alleges under Maryland law.

to various protected statuses, such as "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, military status, or disability." *Porterfield v. Mascari II, Inc.*, 823 A.2d 590, 602 (2003); MD. CODE ANN., STATE GOV'T § 20-602.[7]  Boor concedes that his employment contract was at will but alleges that the breach occurred because he was fired "for his disability/medical complications with diabetes." (ECF No. 2 ¶ 27.)  Boor cannot allege a contractual obligation not to fire him based on his disability or medical status because American Woodmark already had a statutory obligation not to discharge him based on his protected disability status.  *See Porterfield*, 823 A.2d at 602.  That is, American Woodmark's duty not to terminate Boor based on his disability arose not from the parties' at-will employment contract but from pre-existing federal and state statutes.  As such, Boor has not alleged sufficient consideration that would support a contractual duty where a pre-existing statutory duty already precluded his termination, and he has failed to sufficiently allege the first element of a breach of contract claim based on wrongful termination.  *See Hoppe*, 835 F. Supp. 2d at 35.

Second, Boor's allegation that American Woodmark breached the employment contract by failing to give him a ten percent raise upon his promotion in September 2021 is similarly deficient.  Boor's Complaint "dances around a contractual obligation without actually alleging one."  *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 541 (D. Md.

---

[7]  In addition to Maryland laws prohibiting wrongful discharge, Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, among others, also make illegal discrimination against employees based on protected statuses.  These federal statutes also create a pre-existing duty for American Woodmark.  *See* 42 U.S.C. § 2000e-7 ("Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State…other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.").

2014).  Although "Maryland law does not require a plaintiff to cite to a specific contractual provision to survive a motion to dismiss," Boor does not assert any terms of the contract that were allegedly breached; he merely states that "[a] contractual obligation existed" that obligated the parties to abide by the terms of the contract.  *Wells v. Pennrose Mgmt. Co.*, No. CV ADC-24-01746, 2024 WL 4476512, at *5 (D. Md. Oct. 11, 2024); (ECF No. 2 ¶ 26).  Plaintiffs are required to provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. The bald allegation that a contractual obligation existed, without more, is not sufficient to survive dismissal under the Rule 12(b)(6) pleading standard.

Boor does not allege any facts in the Complaint that this ten percent raise was a contractual obligation as opposed to a mere custom.  Instead, he raises the bare allegation that a ten percent base pay increase "is customary."  (ECF No. 2 ¶ 28.)  Even construing Boor's Complaint to raise a claim of breach of contract based on a customary duty, however, his conclusory allegation that a raise "is customary" is insufficient to establish a cognizable cause of action.  *See Twombly*, 550 U.S. at 556.  To the extent that Boor is raising an argument regarding custom or usage, the Court looks only to his Complaint when evaluating his claims' adequacy under Rule 12(b)(6).[8]  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d

---

[8] Boor contends in his opposition to American Woodmark's Motion to Dismiss that "it is Defendant AWC's custom to provide employees with a ten percent (10%) base pay increase for the promotion to 3rd Shift Superintendent."  (ECF No. 12 at 5.)  As Boor acknowledges in his opposition, however, to establish an enforceable right through custom, a plaintiff must present clear and convincing evidence that a custom or usage "was definite, uniform, well established, and so general that knowledge of it may be presumed." (ECF No. 12 at 5 (citing *Brass Metal Prod., Inc. v. E-J Enters., Inc.*, 189 Md. App. 310, 380 (2009).)  Notwithstanding Boor's failure to sufficiently claim a custom or usage in his Complaint, he has not presented clear and convincing evidence that employees receive a ten percent base pay increase upon their promotion to 3rd Shift Superintendent.  Boor claims nothing more than that this custom is "definite, uniform, well-established, and so general that knowledge of it within the company is presumed." (ECF No. 12 at 5.)  He provides no examples

9

435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."). Boor's contention that he was contractually entitled to a ten percent raise because it "is customary," (ECF No. 2 ¶ 28), is a bare allegation without any factual support such that it is insufficient to survive American Woodmark's Motion to Dismiss (ECF No. 5).

Finally, Boor's allegation that American Woodmark "intentional[ly] and malicious[ly]" withheld "significant hours and pay from Plaintiff's paychecks from March 2023 through December 2023" is insufficiently alleged.[9] (ECF No. 2. ¶29.) Even assuming the allegations in the Complaint are true, the Complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Boor claims that this withholding of pay, supported by pay stubs with handwritten notations at the bottom saying that certain hours were "docked" (ECF No. 1, Ex. C-2), is a breach of his employment contract with American Woodmark. (ECF No. 2 ¶ 29.) Yet Boor does not provide any additional facts regarding the number of hours he actually worked during those pay periods, or, most significantly, how withholding the deductions violated American Woodmark's contractual obligations to Boor. On the alleged facts, Boor has alleged neither the contractual duty owed nor the manner in which that alleged

---

of discussions of the ten percent raise, instances in which other promoted employees receive such a raise, or any other allegations that would approach the standard to allege a customary right.

[9] This allegation arises under Boor's breach of contract claim, but the "intentional and malicious" language sounds in intentional tort. The Court notes, therefore, that the Maryland Supreme Court has carefully distinguished the damages available under breach of contract and intentional tort claims. *See Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269–70 (1994) (discussing at length difference between contract and tort claims and noting Maryland courts have "refused to adopt any theory of tortious interference with contract or with economic relations that 'converts a breach of contract into an intentional tort.'" (quoting *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 981 (1989)); *Sims v. Ryland Grp., Inc.*, 378 A.2d 1, 4 (App. Ct. Md. 1977) (distinguishing damages available in breach of contract and tort cases). In this case, the Court treats Count I as a breach of contract claim according to the plain language under which it is pled.

duty was materially breached.  As such, under Maryland law, he has not plausibly alleged elements of breach of contract.  *See RRC Northeast, LLC,* 994 A.2d at 434.

For these reasons, American Woodmark's Motion to Dismiss the Complaint (ECF No. 5) is GRANTED as to Count I, which is DISMISSED WITHOUT PREJUDICE.[10]

## II.    Wrongful Termination Claim (Count II)

Although Maryland common law provides that an employment contract of indefinite duration may be terminated by the employer or employee at any time, Maryland recognizes a public policy exception for the tort of wrongful discharge "when the motivation for the discharge contravenes some clear mandate of public policy."  *Adler*, 432 A.2d at 473.  Under this exception, "[f]or an at-will employee to establish wrongful termination, 'the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee.'"  *Yuan v. Johns Hopkins Univ.*, 157 A.3d 254, 262 (Md. 2017) (quoting *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (2002)); *see also Porterfield*, 823 A.2d . at 596 ("The public policy exception to the at-will employment doctrine holds that an employee who has been 'discharged in a manner that contravenes public policy,' may bring a cause of action in tort 'for abusive or wrongful discharge against his former employer.'" (quoting *Adler*, 432 A.3d. at 35–36)).  Crucially, this cause of action is "limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 180 (1989);

---

[10]  For the reasons set forth below, Boor may file an Amended Complaint within fourteen days of the date of this Memorandum Opinion and Order, i.e., by April 11, 2025.

*see also Kerrigan v. Magnum Ent., Inc.*, 804 F. Supp. 733, 735 (D. Md. 1992) ("It is clear that when a remedy is available under Title VII or [MD. CODE ANN., STATE GOV'T § 20], an action for wrongful discharge will not lie in Maryland."). In this case, Boor's employment contract is at will such that his wrongful termination claim may only lay under Maryland's public policy exception.

Even under the public policy exception, however, Boor's wrongful termination claim is not sufficiently alleged. Boor concedes that his employment contract was at will but alleges his wrongful termination claim under the public policy exception for wrongful discharge because he was terminated on the basis of his disability. As the Supreme Court of Maryland has recognized, "where a statute already has its own remedy, 'allowing full tort damages to be claimed in the name of vindicating the statutory public policy goals upsets the balance between the right and remedy struck by the Legislature in establishing the very policy relied upon.'" *Yuan*, 147 A.3d at 264 (quoting *Makovi*, 561 A.3d at 189). The Americans with Disabilities Act ("ADA") and its Maryland analogue both provide separate, civil statutory remedies under which Boor may vindicate his interests. *See Makovi*, 561 A.2d at 180; *Hoppe*, 835 F. Supp. 2d at 735. Accordingly, Boor cannot meet the elements of the public policy exception under which he seeks to raise his wrongful termination claim.[11]

Therefore, Boor's wrongful termination claim is dismissed, and American Woodmark's Motion to Dismiss the Complaint (ECF No. 5) is GRANTED as to Count II. This dismissal

---

[11] Both the ADA and the state of Maryland's prohibitions on employment discrimination carry administrative exhaustion requirements. *See* 42 U.S.C. § 2000e-5(b)-(f)(1); *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (noting that the ADA incorporates Title VII of the Civil Rights Act of 1964's enforcement procedures, including administrative exhaustion); MD. CODE ANN., STATE GOV'T § 20-1007. The Court makes no determination regarding Boor's exhaustion of his administrative remedies in this case.

is WITHOUT PREJUDICE, however, to the filing of a wrongful termination claim after he has exhausted administrative remedies under the ADA and/or Maryland State Government Article § 20-1007. As explained above, the existence of civil statutory remedies through which Boor may pursue a wrongful termination claim based on a disability precludes his tort claim of wrongful termination based on Maryland's public policy exception for alleged wrongful discharge under an at-will employment contract. The civil statutory remedies, however, provide Boor a path to raise a statutory cause of action of wrongful discharge after exhausting administrative remedies. *See, e.g.*, *Haneke v. Mid-Atl. Capital Mgmt.*, 131 F. App'x 399, 399–400 (4th Cir. 2005) (discussing claim of wrongful discharge, including administrative exhaustion requirement, under ADA); *Nance v. Md. Dep't of Juvenile Servs.*, 2015 WL 1210654, at *6 n.8 (D. Md. Mar. 16, 2015) (discussing state discrimination claims, including state administrative exhaustion requirement, brought under MD. CODE ANN., STATE GOV'T § 20-1007). For this reason, the wrongful discharge tort claim in Count II is DISMISSED WITHOUT PREJUDICE to the filing of a wrongful discharge claim under the available state and federal statutory schemes and their exhaustion requirements.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 5) shall be GRANTED. Specifically, Plaintiff's Count I is DISMISSED WITHOUT PREJUDICE, and Plaintiff's Count II is DISMISSED WITHOUT PREJUDICE to the filing of a wrongful discharge claim under the statutory schemes—including their procedural requirements—governing discrimination in employment. Generally, leave to amend a complaint to address deficiencies in the original complaint is freely given pursuant to Rule 15(a). Indeed, there is

authority that a plaintiff should be given at least one opportunity to amend a complaint before dismissal of a case with prejudice. *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)). However, there is authority that leave to amend does not need to be granted unless requested by the plaintiff. *Id.* (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555–56 (5th Cir. 2007)). Nevertheless, leave to amend may be denied if such amendment is deemed futile. *Goode,* 807 F.3d at 624.

This Court deems it prudent to afford Plaintiff the opportunity to amend his Complaint. As noted above, Boor has failed to plausibly allege that American Woodmark breached any contractual obligations. Nevertheless, Boor may file an Amended Complaint within fourteen days of this Memorandum Opinion, i.e., by April 11th, 2025. Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. *Harvey*, 520 F. Supp. 3d at 725 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)). Accordingly, the DISMISSAL of this action will initially be WITHOUT PREJUDICE. If an Amended Complaint is not filed by April 11th, 2025, the Clerk of this Court is instructed to CLOSE this case with DISMISSAL WITH PREJUDICE.

A separate Order follows.

/s/ _____
Richard D. Bennett
United States Senior District Judge